UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KEITH A. BROWN,

       Plaintiff,

    v.

BRIAN P. BRENNER,

       Defendant.

Case No. 24-cv-01885-JPG

## MEMORANDUM AND ORDER

This case is before the Court on Defendant Brian Brenner's Motion for Summary Judgment (Doc. 66). He asks the Court to enter summary judgment in his favor on Plaintiff Keith Brown's excessive force claim. Plaintiff filed a response (Doc. 70), and Defendant filed a reply (Doc. 71).

## I.    BACKGROUND

### A.  Evidence Considered:

As a preliminary matter, Plaintiff challenges the admissibility of the evidence that he called his mother and told her he had a firearm and planned to kill George Cantrell ("Cantrell") and then commit suicide. He argues that this evidence is inadmissible hearsay and therefore asks the Court to disregard it.

Plaintiff is correct that, in ruling on a motion for summary judgment, the Court may only consider evidence that would be admissible at trial. *See Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016). However, the evidence that Plaintiff seeks to exclude is not hearsay. To begin, Plaintiff fails to explain how the statements of his mother are being offered to prove the truth of the matter asserted. That alone is enough for the Court to reject his argument. *See* FED. R. EVID. 801(c)(2) (defining hearsay as "a statement that . . . a party offers in evidence to prove the truth

of the matter asserted"); *Torry v. City of Chicago*, 932 F.3d 579, 585 (7th Cir. 2019) (stating that the plaintiffs failed to "articulate why any of the statements within the [police] report [were] offered as proof of the truth of the matter asserted" and "[t]heir failure to develop this argument is enough to dispense with it").

Further, these statements are admissible to show their effect on the listener. *See Torry*, 932 F.3d at 585 ("Statements introduced to show their effect on the listener, rather than the truth of the matter they assert, are not hearsay."). They give the Court insight into the information that Defendant had at the time of the arrest, and the impact that the information had on him. This information is relevant to determine whether Defendant's actions, during the arrest of Plaintiff, were objectively reasonable. *See Jewett v. Anders*, 521 F.3d 818, 825 n.5 (7th Cir. 2008); *Coleman v. Tinsley*, No. 1:10-CV-327, 2012 WL 728310, at *4 (N.D. Ind. Mar. 6, 2012). As such, the Court will consider this evidence in ruling on the motion.

B. Relevant Facts:

The material facts of this case are contested. Viewed in the light most favorable to Plaintiff, the relevant evidence and the reasonable inferences that can be drawn from that evidence establish the following facts.[1]

This case arises from events that occurred on January 23, 2024. On that date, Plaintiff was homeless but residing in Illinois, and Defendant was a sworn police officer holding the rank of Sergeant with the Alton Police Department ("Alton PD"). That morning, Plaintiff called his mother. He advised her that he had a firearm, and that he intended to use that firearm to kill

---

[1] There is body cam footage of the incident from multiple different angles. To the extent any of the facts alleged are "blatantly contradicted" by the footage, and the footage is "so definitive that there could be no reasonable disagreement about what the video depicts," the Court has viewed the facts in the light depicted in the video. *See Kailin v. Vill. of Gurnee*, 77 F.4th 476, 481 (7th Cir. 2023).

Cantrell and then commit suicide. Plaintiff's mother contacted the authorities about the phone call, and the information was relayed to Alton PD. Alton PD went to Cantrell's house, but Plaintiff was not there. Alton PD, as well as other police in the area, were advised to watch for Plaintiff.

At approximately 2:13 pm, Plaintiff was spotted by Alton PD officer Thomas Gattuso ("Gattuso"). Gattuso was in full police uniform. He notified other officers within the City of Alton that he was engaged in a foot pursuit with Plaintiff. Defendant heard the radio traffic regarding the pursuit and headed in that direction in his squad car.

Defendant saw Plaintiff running down the street and began a foot pursuit of Plaintiff. Defendant repeatedly advised Plaintiff to stop or he would be tased. Plaintiff stopped and reached into his waistband. Defendant believed that Plaintiff was pulling a firearm from his waistband and deployed his taser for a standard five-second cycle. Plaintiff did in fact pull a handgun and pointed it towards Defendant as he was being tased. Plaintiff immediately fell to the ground on his back and side, striking his head. Approximately 10 seconds elapsed from the time Defendant began chasing Plaintiff until Defendant deployed his taser.

After deploying his taser, Defendant dropped it to the ground and drew his department-issued firearm. Defendant repeatedly instructed Plaintiff to drop the gun. A few of these instructions were given after Plaintiff had already dropped the gun. Defendant then kicked the gun away.

At this time, Gattuso arrived on the scene, flipped Plaintiff onto his stomach, and began handcuffing him. Approximately 10 seconds elapsed from the time Defendant deployed his taser until Gattuso arrived and started to handcuff Plaintiff.

3

While Plaintiff was being handcuffed, he was lying face down, he remained quiet, was not verbally threatening or abusive, was not trying to escape or flee, and was not actively resisting arrest. Defendant then holstered his firearm and jumped, with both feet in the air, and drove his knee into Plaintiff's side and back.[2] Defendant is 6'6" and weighs approximately 335 pounds. Plaintiff immediately began making moaning and groaning noises. It took Gattuso and Defendant approximately 30 seconds to handcuff Plaintiff. Plaintiff has no recollection of the events that occurred on the afternoon of the arrest.

Plaintiff filed this suit under 42 U.S.C. § 1983, asserting that Defendant violated his Fourth Amendment rights by using excessive force when arresting him. He also asserted claims against three other Alton PD officers under 42 U.S.C. § 1983 for failure to intervene, but he has stipulated to dismissal of those claims.

## II.   <u>LEGAL STANDARD</u>

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

---

[2] Defendant argues that he merely knelt down and placed his knee on Plaintiff's back to assist Gattuso in handcuffing Plaintiff. However, at this stage, the Court must construe the evidence in the light most favorable to Plaintiff. In addition, contrary to Defendant's contention, Plaintiff's allegation that Defendant jumped in the air and drove his knee into Plaintiff's side and back is not blatantly contradicted by definitive video evidence. Accordingly, for the purposes of this motion, the Court will accept Plaintiff's account.

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the non-moving party carries the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways. First, it may present evidence that affirmatively negates an essential element of the non-moving party's case. *See* FED. R. CIV. P. 56(c)(1)(A). Second, it may point to an absence of evidence to support an essential element of the non-moving party's case without actually submitting any evidence. *See* FED. R. CIV. P. 56(c)(1)(B); *Celotex*, 477 U.S. at 325; *Modrowski*, 712 F.3d at 1169. Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 256–57; *Modrowski*, 712 F.3d at 1168–69. A genuine issue of material fact is not demonstrated by the mere existence of "*some* alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

## III.    <u>ANALYSIS</u>

Before reaching the merits, the Court must address the parties' differing interpretations of

the factual basis for the excessive force claim. Plaintiff argues that the claim is based on the deliberate power knee drop performed by Defendant. Defendant, on the other hand, believes that the claim is based on his initial deployment of the taser and argues that Plaintiff is making an "after-the-fact course correction" by pleading a factual basis that is not asserted in the second amended complaint. The resolution of this dispute is important because "[a]n attempt to alter the factual basis of a claim at summary judgment may amount to an attempt to amend the complaint." *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859 (7th Cir. 2017).

In the second amended complaint, Plaintiff does not allege that the initial taser deployment constituted excessive force. Instead, his claim focuses on the events that occurred after the taser deployment, while he was subdued on the ground. Specifically, Plaintiff alleges that, while he was immobilized by the taser, Defendant kicked him on the left side of his head and dropped down on top of him to assist Gattuso in handcuffing him in a forceful manner. He contends that this force was excessive because he had been subdued, was prone on the ground, and multiple officers were on the scene. Sure, the second amended complaint does not use the words "knee" or "power knee drop." But it does allege that Defendant dropped down on top of Plaintiff in a forceful manner. The Court believes that allegation is broad enough to encompass a deliberate power knee drop. Accordingly, the factual basis that Plaintiff raised on summary judgment is the same factual basis that Plaintiff raised in his second amended complaint.

Now that the Court has determined the factual basis of Plaintiff's excessive force claim, it will turn to the merits of the motion for summary judgment. Defendant alleges that he is entitled to summary judgment because: (1) no reasonable jury could find that his conduct was objectively unreasonable; and (2) he is entitled to qualified immunity for his actions.

6

The Fourth Amendment forbids unreasonable searches and seizures, including seizures of individuals that are unreasonable because they involve the use of excessive force. *See Graham v. Connor*, 490 U.S. 386, 394–95 (1989); *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985). To determine whether unreasonable force was used, the Court balances the nature and quality of the Fourth Amendment intrusion on the plaintiff with the governmental interest at stake. *Garner*, 471 U.S. at 8. The Court must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The test is an objective reasonableness test; that is, the situation should be evaluated from the point of view of a reasonable officer on the scene rather than in 20/20 hindsight. *Id.* The officer's "use of force is unconstitutional if, judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Chelios*, 520 F.3d at 689 (internal quotations omitted).

Qualified immunity is an affirmative defense that shields government officials from liability for civil damages where their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). It protects an official from suit "when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The qualified immunity test has two prongs: (1) whether the facts shown, taken in the light most favorable to the party asserting

the injury, demonstrate that the officer's conduct violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232; *see Brosseau*, 543 U.S. at 197; *Wilson v. Layne*, 526 U.S. 603, 609 (1999). Under the second qualified immunity prong, the law at the time of the conduct "must have placed the constitutionality of the officer's conduct beyond debate" such that "every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal quotations omitted).

Based on the totality of the circumstances of this case, a reasonable jury could find that Defendant used greater force than was reasonably necessary to arrest Plaintiff. A reasonable officer would not think it necessary, even with a previously armed and fleeing suspect, to jump into the air and drive his knee into the suspect's body when the suspect was laying on the ground with another officer on top of him, was no longer moving on his own accord, and was no longer actively resisting arrest.

It was also clearly established at the time that such conduct would violate Plaintiff's Fourth Amendment right to be free from excessive force. *See Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014) (stating that "the law is clearly established that police officers cannot use 'significant' force on suspects who are only passively resisting arrest," and "[t]his prohibition against significant force against a subdued suspect applies notwithstanding a suspect's previous behavior–including resisting arrest, threatening officer safety, or potentially carrying a weapon").

In *Miller*, the suspect fled the police and jumped over a fence, leaving him trapped in an enclosed area. 761 F.3d at 824–25. An officer in pursuit then jumped the fence and, with his gun drawn, ordered the suspect to the ground. *Id.* at 825. The suspect complied, lay down on his

stomach, and placed his arms at his sides. *Id.* Seconds later, another officer arrived, jumped over the fence, and landed directly on the suspect's head, breaking his left jaw. *Id.* The Seventh Circuit said that summary judgment was inappropriate because, given these facts, it was not "objectively reasonable to break [the suspect's] jaw to effectuate arrest (or to protect the officers), notwithstanding his previous attempt to flee" and "this was clearly established at the time of [the suspect's] arrest." *Id.* at 830.

The same is true here. Plaintiff fled from the police and pulled a firearm and pointed it towards Defendant. In other words, he resisted arrest and posed a risk to officer safety. However, once Defendant tased him, his resistance stopped. Plaintiff was lying on his stomach with his hands at his sides, had an officer on his back, was not moving on his own accord, and was not actively resisting arrest, when Defendant jumped in the air and drove his knee into Plaintiff's back and side. Over 15 seconds had elapsed between the deployment of the taser and the deliberate power knee drop. During this time, Defendant drew his department-issued firearm and pointed it at Plaintiff until Gattuso arrived on the scene and began to handcuff him. Given these facts, it would not be objectively reasonable for Defendant to jump in the air and drive his knee into Plaintiff to effectuate the arrest, notwithstanding the fact that Plaintiff had previously fled from the police and pulled a firearm and pointed it towards Defendant. And based on *Miller* and the cases cited therein, this was clearly established at the time of Plaintiff's arrest. *See* 761 F.3d at 829.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** Defendant Brian Brenner's Motion for Summary Judgment (Doc. 66). By separate order, the Court will set a telephone status

conference to set dates for the Final Pretrial Conference and Trial.

**IT IS SO ORDERED.**
**DATED**: May 14, 2026

_____
**J. PHIL GILBERT**
**United States District Judge**